NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
Christopher D. Hughes (SBN 254864)
621 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: (916) 442-8888
Facsimile: (916) 442-0382
pweiland@nossaman.com
chughes@nossaman.com

KELLEY DRYE & WARREN LLP
David E. Frulla (*pro hac vice* pending)
Bret A. Sparks (*pro hac vice* pending)
3050 K Street NW, Suite 400
Washington, DC 20007
Telephone:  (202) 342-8400
Facsimile:  (202) 342-8451
dfrulla@kelleydrye.com
bsparks@kelleydrye.com

*Counsel for Plaintiffs,*
*Boot Barn, Inc. and Dan Post Boot Company*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOOT BARN, INC., a Delaware Corporation, and DAN POST BOOT COMPANY, a Tennessee Company,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ROB BONTA, in his official capacity as Attorney General for the State of California,<br><br>                    Defendant. | Case No: _____<br><br>**COMPLAINT TO DECLARE INVALIDITY OF CALIFORNIA PENAL CODE § 653o(c), AS IT APPLIES TO TEJU, RING, AND NILE LIZARDS, FOR VIOLATION OF THE SUPREMACY CLAUSE AND THE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION** |

**INTRODUCTION**

1.      Plaintiffs Boot Barn, Inc. and Dan Post Boot Company (collectively, "Plaintiffs"), by and through undersigned counsel, bring this Complaint against Defendant the Honorable Rob Bonta, in his official capacity as Attorney General of California, (hereafter, "Defendant"), for violations of the Supremacy Clause and the Commerce Clause of the United States Constitution relating to California Penal Code § 653o(c) ("Section 653o(c)") as it applies to Teju, Ring, and Nile lizards.

2.      Pursuant to A.B. 1260 (passed in 2019 and enacted as Section 653o(c)), the California legislature amended California Penal Code § 653o to ban trade, effective January 1, 2022, in what A.B. 1260 termed "Teju, Nile, and Ring lizards."  In pertinent part, Section 653o(c) reads as follows:

> Commencing January 1, 2022, it is unlawful to import into [the State of California] for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of . . . a Teju, Ring, or Nile lizard.

3.      These three groups of lizard species, which Plaintiffs understand to include the lizard species they actively trade in, are classified as Appendix II species under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES").  As Appendix II species, the lizard species in which Plaintiffs trade are all legally permitted for commercial trade in the United States under regulations implemented pursuant to the Endangered Species Act, 16 U.S.C. § 1531, *et. seq.* (the "ESA").

4.      More specifically, ESA-based regulations, set forth at 50 C.F.R. Part 23, implement the principal elements of the U.S.'s participation in CITES.  Among many other things, Part 23 defines the scope of permissible state regulation of trade in Appendix II species, providing that trade in these species shall be subject to compliance with state "conservation laws."  However, and as explained in greater detail below, Section 653o(c) is not a conservation law as it applies to Teju, Ring, and Nile lizards.  Thus, Section 653o(c) violates the U.S. Constitution's Supremacy Clause, as Section 653o(c) is impliedly preempted by the ESA's implementing regulations with regard to Teju, Ring, and Nile lizards.

5.     Further, Section 653o(c) violates the U.S. Constitution's Commerce Clause.  As it applies to Teju, Ring, and Nile lizards, this state law imposes a substantial burden upon an inherently national regime—the U.S. regime implementing our national commitments under CITES—without providing any sufficiently countervailing, constitutionally cognizable local benefit.

## THE PARTIES

6.     Plaintiff Boot Barn, Inc. ("Boot Barn") is a Delaware corporation with its principal place of business located in Irvine, California.  Boot Barn is a western and work wear retailer with over 320 stores located in the United States.  Boot Barn retails boots, shoes, and belts made from Teju and Ring lizard leather.  Boot Barn operates over 60 stores in the state of California and employs over 8,000 workers nationwide, with roughly 1,200 of its employees located in California.  Boot Barn sources its lizard leather products from numerous brands, including Plaintiff Dan Post Boot Company.  Boot Barn also operates a private label for Teju and Ring lizard products sourced from Central and South America.  Prior to Section 653o(c)'s implementation, greater than half of Boot Barn's historical revenues from lizard leather products were derived from sales in California.  Beginning this year, Boot Barn was forced to remove all lizard leather products from the shelves of its California stores and relocate this merchandise to other warehouses outside the state.  Thus, in addition to its considerable lost revenues from California sales due to Section 653o(c)'s implementation, Boot Barn has incurred significant expenses from relocating its California lizard leather inventories, and is now laden with surplus stock.  None of these economic losses are recoverable due to the Eleventh Amendment's bar on recovery from a sovereign state.  Therefore, enjoinment of Section 653o(c)'s ban on these lizard species serves as Boot Barn's only means of redressability.

7.     Dan Post Boot Company ("Dan Post") is a Tennessee company with its principal place of business located in Clarksville, Tennessee.  Dan Post is a western wear company that specializes in providing a full array of leather boots, including those made from lizards listed in Section 653o(c). Dan Post sources its lizard boots from manufacturers in Mexico and distributes these boots to larger retailers, including co-Plaintiff Boot Barn, which then sell them throughout

the U.S., including California.  Dan Post also sells a portion of its lizard boots direct-to-consumer via online sales, including to residents of California.  Although Dan Post no longer sells its lizard boots in the state of California, California transactions have historically accounted for roughly 60% of its total sales of lizard boots.  In 2021, Dan Post sold nearly 5,000 pairs of lizard boots into the state of California, which amounted to roughly $750,000 in revenue.  However, this lost revenue is unrecoverable due to the Eleventh Amendment's bar on recovery from a sovereign state.  Thus, enjoinment of Section 653o(c)'s ban on these lizard species serves as Dan Post's only means of redressability.

8.     Defendant, the Honorable Rob Bonta, is the Attorney General of California.  In his official capacity under the California Constitution, the Attorney General is "the chief law officer of the State," with "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law."  Cal. Const. Art. 5, § 13.  Under section 12550 of the California Government Code, Defendant Bonta both has "direct supervision over the district attorneys of the several counties" and also may "take full charge of any investigation or prosecution of violations of law," in which case he "has all the powers of a district attorney." Defendant Bonta is also a peace officer and, as such, has direct authority to enforce Section 653o(c) of the California Penal Code pursuant to Section 653o(d) of the California Penal Code.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201-02.

10.    Venue is properly situated in this District pursuant to 28 U.S.C. § 1391 because Defendant is a resident of the State of California, is subject to personal jurisdiction in this District with respect to this action, and because a substantial part of the property that is the subject of the action is situated in this district.

## LEGAL & FACTUAL BACKGROUND

**A.  The Endangered Species Act, Its Implementing Regulations, and CITES**

11.    In March 1973, the United States Congress ratified CITES, the only global treaty that ensures international wildlife trade is based on sustainable use and management of wild and

captive populations of animals and plants.  CITES provides a framework for cooperation and collaboration among nations to maintain these wild populations.  Today, more than 180 countries, including the United States, implement CITES.

12.    In December 1973, Congress adopted the ESA to, among other things, "take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a)," which includes CITES.  16 U.S.C. § 1531(b).  However, the ESA, as originally enacted, did not execute CITES for domestic implementation.  Rather, a contracting nation must initiate the implementation of CITES by designating a Scientific Authority and a Management Authority.  *See* CITES Article IX, paragraph 1.

13.    Accordingly, in 1977, Congress amended the ESA to add 16 U.S.C. § 1537a (titled "Convention Implementation"), which provides in pertinent part that:

> The Secretary of the Interior . . . is designated as the Management Authority and the Scientific Authority for purposes of the Convention and the respective functions of each such Authority shall be carried out through the United States Fish and Wildlife Service.

16 U.S.C. § 1537a(a).  In so doing, Congress expressly delegated the authority to manage trade in CITES-listed species to the U.S. Fish and Wildlife Service ("FWS").

14.    The ESA, as amended, provides further that "[t]he Secretary [of the Interior] shall do all things necessary and appropriate to carry out the functions of the Management Authority under the Convention."  16 U.S.C. § 1537a(b).  As part of its functions as U.S. Management Authority, FWS promulgated regulations to implement the CITES regime principally within 50 C.F.R. Part 23.  Part 23 includes an extensive system of procedures for authorizing trade in CITES-listed species.

15.    The backbone of CITES is the permit system which facilitates international cooperation in conservation and trade monitoring.  A permit is issued to an importer for trade in a given species only if the issuing country's Management and Scientific Authorities determine that trade is legal and does not threaten the species' survival in the wild.  *See* 50 C.F.R. § 23.4.

16.    General permit conditions for trade in CITES-listed species are located at 50 C.F.R. § 23.56(a), which provide, in part, as follows:

> You must comply with the provisions of part 13 of this subchapter as conditions of the document, as well as other applicable regulations in this subchapter, including, but not limited to, any that require permits. **You must comply with all applicable local, State, Federal, tribal, and foreign wildlife or plant <u>conservation</u> laws**.

50 C.F.R. § 23.56(a)(1) (emphasis added).

17.   CITES manages wildlife and plant species through the use of three appendices, which correspond to the "different levels or types of protection from over-exploitation." According to CITES, "Appendix II lists species that are not necessarily threatened with extinction but that may become so unless trade is closely controlled."

18.   A range of lizards are listed under CITES Appendix II and traded internationally. These species include *Salvator merianae* (commonly known as the "Argentine black and white tegu"), *Salvator rufescens* (commonly known as the "Red tegu"), *Tupinambris teguixin* (commonly known as the "Gold tegu"), *Varanus niloticus* (commonly known as the "Nile monitor"), and *Varanus salvator* (commonly known as the "Asian water monitor").  Plaintiffs trade in several, if not all, of these species.  Upon information and belief, these species correspond to the groups of lizards Section 653o(c) categorizes as Teju, Nile, and Ring lizards, respectively.

**B.  California Penal Code § 653o(c)**

19.   Section 653o(c) makes it a crime "to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of . . . a Teju, Ring, or Nile lizard."

20.   The legislative record for A.B. 1260 expressly acknowledges that all three groups of lizards at-issue "are listed as of least concern [for extinction]" by the International Union for Conservation of Nature's ("IUCN") Red List, which serves as the world's most comprehensive inventory of the global conservation status of plant and animal species.  Hearing on A.B. 1260 before the California Assembly Committee on Water, Parks, and Wildlife, at p. 4 (April 9, 2019).  The Red List also serves to guide research, direct actions needed to protect endangered and threatened species, and inform the listing of species under the CITES appendices.

## COMMON ALLEGATIONS

### A.  Supremacy Clause Violation

21.  Section 653o(c)'s bar on trade in Teju, Ring, and Nile lizards is unconstitutional because it violates the Supremacy Clause of the U.S. Constitution.  U.S. Const., Art. VI, ¶ 2.

22.  The ESA's regulations at 50 C.F.R. Part 23 establish the national framework for implementing CITES.  These regulations do not authorize the fifty states to prohibit trade in covered wildlife species for a non-conservation purpose.

23.  All three lizard species groups at-issue are listed in CITES Appendix II, and permits are thus required under 50 C.F.R. Part 23 to engage in commerce in their parts and products.

24.  The general conditions that apply to all CITES permits require compliance with "local, State, Federal, tribal, and foreign wildlife or plant **conservation** laws."  50 C.F.R. § 23.56(a)(1) (emphasis added)).

25.  In 1970, the California legislature enacted California Penal Code § 653o as a conservation statute.  *See* S.B. 128 Enrolled Bill Report from California Department of Fish and Game (August 21, 1970) ("[Section 653o's] intention is to minimize pressure on depleted species which may arise from commercial exploitation.").

26.  However, in enacting Section 653o(c) – via A.B. 1260 – the California legislature did not advance a conservation rationale for its ban on trade in lizards.  Rather, the legislature provided the following as its sole justification for enacting the ban:

> Thousands of lizards, stingrays, sharks, and other species of exotic animals are killed for their skins each year.  These animals suffer greatly for the sake of fashion and vanity, even while alternatives exist.  They experience a lifetime of stress related to intensive confinement, crowding, harsh and unnatural surrounds such as concrete, a lack of fresh water, irregular temperature, and rampant disease.  This bill would protect these animals from experiencing unnecessary and inhumane torture.

*Author's Statement*, Hearing on A.B. 1260 before the California Assembly Committee on Water, Parks, and Wildlife, at p. 2 (April 9, 2019) (emphasis added).

27.  No further conservation purpose was advanced in A.B. 1260's legislative history to support the lizard trade ban.  Moreover, the legislative record expressly acknowledges that all

7

1   three species of lizard at-issue "are listed as of least concern [for extinction]" by the IUCN's Red

2   List.

3       28.     In the specific context of Teju, Ring, and Nile lizards, Section 653o(c) is not a

4   conservation statute.  Rather, it is a trade ban enacted for purposes related to alleged conditions

5   of "inhumane" confinement of lizard species.

6       29.     Use of Penal Code Section 653o as a means to protect species from alleged

7   inhumane treatment represents a significant and material deviation from California's history of

8   listing species under Section 653o to promote conservation.

9       30.     Because Section 653o(c) as it applies to Teju, Ring, and Nile lizards is not a

10  conservation statute, it is impliedly preempted by the ESA and its implementing regulations.

11      **B.  Dormant Commerce Clause Violation**

12      31.     Because it places a substantial burden on an inherently national regime without any

13  commensurate local benefit, Section 653o(c) as it applies to Teju, Ring, and Nile lizards also

14  violates the Constitution's Commerce Clause.

15      32.     The U.S. Constitution's Commerce Clause, Art. I, § 8, cl. 3, grants Congress the

16  power "to regulate commerce with foreign nations, and among the several states, and with the

17  Indian tribes."  Courts have long held that the Commerce Clause implicitly prohibits a state from

18  enacting legislation that discriminates against <u>or excessively burdens</u> interstate commerce.  *See,*

19  *e.g., South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080, 2090-91 (2018) (emphasis added).  This

20  implicit prohibition is known as the "dormant Commerce Clause."

21      33.     If state legislation overtly discriminates against interstate commerce, the law is *per*

22  *se* invalid.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).

23      34.     Plaintiffs do not allege that Section 653o(c) overtly discriminates against interstate

24  commerce, as the law applies equally to individuals within and outside California.  However,

25  Section 653o(c) places an excessive burden on interstate and foreign commerce in Teju, Ring,

26  and Nile lizards in violation of the dormant Commerce Clause.

27      35.     A state law may only be upheld under a dormant Commerce Clause challenge if it

28  effectuates "a <u>legitimate</u> local public interest, and its effects on interstate commerce are only

incidental." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) (emphasis added).

36.     The Ninth Circuit has recognized that nondiscriminatory state laws may be invalidated under the dormant Commerce Clause when such laws place significant burdens on "activities that are <u>inherently national or require a uniform system of regulation</u>." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (emphasis added).

37.     The CITES regulatory structure is inherently national, as the U.S. is a party to CITES and implements and enforces its treaty obligations under U.S. law and regulations.

38.     Trade in Teju, Ring, and Nile lizards is subject to CITES and the national permitting regime that implements CITES, which is set forth principally at 50 C.F.R. Part 23.  Moreover, and as explained above, this national permitting regime falls entirely under the purview of FWS as the Management Authority to CITES for the United States.

39.     Notably, CITES Treaty Art. XIV, § 1 provides that: "The provisions of the present Convention shall in no way affect the right of the Parties to adopt: (a) stricter measures regarding the conditions for trade, taking, possession or transport of specimens of species included in Appendices I, II and III, or the complete prohibition thereof …."

40.     In implementing 50 C.F.R. Part 23 through its role as the U.S.'s CITES Management Authority, FWS has delegated to the states subsidiary latitude to enact and enforce laws related to trade in CITES-regulated species, but only to the extent that such state laws have a conservation purpose.  50 C.F.R. § 23.56(a)(1).

41.     As explained above, Section 653o(c) lacks a conservation purpose as it relates to Teju, Ring, and Nile lizards.

42.     Section 653o(c)'s consequent burden on the national CITES regime, as well as on Plaintiffs and those similarly situated, is real, provable, and substantial.

43.     As a signatory Party to CITES, the United States has a national interest in CITES' full and effective implementation, which Section 653o(c) impedes.

44.     The United States has demonstrated such interest through its international participation in CITES processes and procedures, as well as its domestic development and implementation of a regulatory regime governing, among other things, trade in CITES-listed

species and products.

45.    CITES is, moreover, built upon an international network of diplomacy and communication between national Parties.  Indeed, the Parties to CITES have adopted numerous resolutions at Conferences of the Parties that are intended to provide long-standing guidance on how to interpret the provisions of the Convention.

46.    In 1987, the Parties adopted a resolution addressing the ability of Parties to enact stricter domestic measures on trade in CITES-listed species, which recommends that:

> [E]ach Party intending to take stricter domestic measures pursuant to Article XIV, paragraph 1, of the Convention regarding trade in parts and derivatives of species included in the appendices make every reasonable effort to notify the range states of the species concerned at as early a stage as possible prior to the adoption of such measures and consult with those range states that express a wish to confer on the matter.

Resolution Conf. 6.7, Sixth Meeting of the Conference of the Parties (emphasis added).

47.    CITES defines a "Party" as "a State for which the present Convention has entered into force."  *See* CITES Article I, section (h).

48.    Under CITES, the United States is a Party to the Convention, not California.

49.    The United States is not a range state for any of the lizard species groups at-issue here.

50.    The range states for species of Teju, Ring, and Nile, which include nations from South America, Southeast Asia, and Central Africa, did not receive the necessary consultation prior to Section 653o(c)'s enactment, thereby further impeding the U.S.'s international obligations under CITES.

51.    Therefore, enforcement of Section 653o(c) with regard to Teju, Ring, and Nile lizards places a substantial burden on interstate and foreign commerce by disrupting this national trading regime – in direct contravention of the dormant Commerce Clause.

52.    Additionally, Plaintiffs and others similarly situated stand to lose millions of dollars annually in lost trade due to Section 653o(c)'s ban on trade in lizards, further exacerbating Section 653o(c)'s substantial burden on interstate and foreign commerce.

53.    Conversely, Section 653o(c)'s purported benefits are non-existent with regard to these three groups of lizards.

54.    As explained above, Section 653o(c)'s legislative purpose rests on claims of alleged "inhumane torture," to wit, "a lifetime of stress related to intensive confinement, crowding, harsh and unnatural surroundings such as concrete, a lack of fresh water, irregular temperatures, and rampant disease." *Author's Statement*, Hearing on A.B. 1260 before the California Assembly Committee on Water, Parks, and Wildlife, at p. 2 (April 9, 2019).

55.    However, scientific literature demonstrates the lizards at-issue are not subjected to these aforementioned stressors or cruelty.  Rather, these lizards are captured <u>in the wild</u> for use in the leather industry, and are not held in confinement or unnatural conditions prior to their use in the industry.  *See*, *e.g.*, S. Khadiejah *et al.*, *Asian water monitors (Varanus salvator) remain common in Peninsular Malaysia, despite intense harvesting*, Wildlife Research vol. 46, 265-76 (2019), at p. 266-67 ("Processing facility owners purchasing live monitor lizards from hunters claim that only 10-20% of **captured** lizards >5 kg are purchased and killed.  Traders claim to release lizards with inferior skins.  We examine this claim, and hereafter refer to lizards >5 kg as being within the 'preferred size range.'") (emphasis added).  *See also id.* at p. 273 ("Hunters and traders also recognize that the focus on specimens from 1 to 5 kg body mass results in the survival of many individuals.  Indeed, our observations confirm that many lizards with poor-quality skins are rejected by processing facilities, and that **the animals are then taken and released into nearby areas of forest and oil palm**.") (emphasis added).

56.    Because the lizard species at-issue are not subjected to "inhumane torture" from a "lifetime of confinement" as alleged in Section 653o(c)'s legislative history, California's stated rationale for banning their trade is fundamentally flawed.  Thus, any purported local benefits in preventing the alleged inhumane confinement of species listed in Section 653o(c) are nonexistent with regard to Teju, Ring, and Nile lizards.

57.    Further, California cannot claim a conservation benefit for these lizards, as all three are listed by the IUCN's Red List as being of "least concern" for extinction.  Indeed, several of these lizards occur in parts of the southeastern U.S. as invasive nuisance species.  *See*, *e.g.*,

Johnson and McGarrity, *Florida Invader: Tegu Lizard*, University of Florida Institute of Food and Agricultural Services (December 2020), available at https://edis.ifas.ufl.edu/pdf/UW/UW34000.pdf (last accessed on November 18, 2022). *See also* Taylor Telford, *Florida family terrorized by backyard squatter: A giant lizard that looks like something out of 'Jurassic Park'*, The Washington Post (August 31, 2018), available at https://www.washingtonpost.com/science/2018/08/31/florida-family-terrorized-by-backyard-squatter-giant-lizard-that-looks-like-something-out-jurassic-park/ (last accessed on November 18, 2022).

58.     Moreover, in the case of Teju lizards, the Argentinian Government has declared in Secretary of Environment and Sustainable Development Resolution 1079/2015 (Dec. 29, 2015), that "the use of wild species results in benefits for local communities for the conservation of the habitat and the resource itself, when carried out in a sustainable manner" and has authorized annual export quotas of up to one million hides every year since 2013.

## PLAINTIFFS' CLAIMS FOR RELIEF

### COUNT I
**(Declaratory Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Supremacy Clause of the United States Constitution Due to Preemption)**

59.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth and alleged herein.

60.     Pursuant to the U.S. Constitution's Supremacy Clause, federal law is the supreme law of the land.  Under the Supremacy Clause, preemption can either be express or implied.

61.     "It is a familiar and well-established principle that the Supremacy Clause invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211) (1824)) (internal quotation omitted).

62.     A "state law is nullified to the extent that it actually conflicts with federal law.  Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility.'" *Hillsborough County*, 471 U.S. at 713 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963).

63.     The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." *Id.*

64.     Federal law also impliedly preempts state law where, as here, it would thwart the objectives of federal law and "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

65.     The ESA and its implementing regulations, as well as permits issued pursuant to CITES under such regulations, do not authorize states to prohibit, and thus preclude any state from prohibiting, the sale of Teju, Ring, and Nile lizards, and their parts and products for a non-conservation purpose.

66.     Because Section 653o(c) attempts to prohibit the sale and trade of regulated Teju, Ring, and Nile lizards, and their parts and products without a conservation justification, this Court should issue a declaration limiting Section 653o(c)'s reach to species other than Teju, Ring, and Nile lizards.

## COUNT II
**(Declaratory Relief Pursuant to 42 U.S.C. § 1983 – Violation of the Commerce Clause of the United States Constitution)**

67.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as if fully set forth and alleged herein.

68.     The Constitution's dormant Commerce Clause prevents states from unduly interfering with interstate and foreign commerce, especially where, as here, an inherently national regime for managing such commerce exists.

69.     Section 653o(c) substantially burdens interstate and foreign commerce in Teju, Ring, and Nile lizards to the significant economic detriment of Plaintiffs and others similarly situated.

70.     Section 653o(c) violates the dormant Commerce Clause because it places a substantial burden on an inherently national permitting and trade regime with no expressed corresponding local benefit to California or its citizens.

71.     Because Section 653o(c) attempts to prohibit the sale and trade of regulated Teju, Ring, and Nile lizards, and their parts and products in violation of the dormant Commerce Clause, this Court should declare Section 653o(c) unconstitutional to the extent that it bans trade in Teju, Ring, and Nile lizards.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Enter a declaratory judgment finding that California Penal Code § 653o(c) is unconstitutional as it applies to Teju, Ring, and Nile lizards, for the reasons explained above;

2.      Enjoin Defendant from enforcing California Penal Code Section 653o(c) as it applies to Teju, Ring, and Nile lizards.

3.      Award Plaintiffs reasonable attorneys' fees and costs to the extent permitted by law, including but not limited to those attorneys' fees and costs permitted by, *inter alia*, 42 U.S.C. § 1988; and

4.      Order such other and further relief as the Court deems just and proper.


Dated: November 21, 2022          By:___/s/ *Christopher D. Hughes*_____

NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
Christopher D. Hughes (SBN 254864)
621 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: (916) 442-8888
Facsimile: (916) 442-0382
pweiland@nossaman.com
chughes@nossaman.com