NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
Christopher D. Hughes (SBN 254864)
621 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: (916) 442-8888
Facsimile: (916) 442-0382
pweiland@nossaman.com
chughes@nossaman.com

KELLEY DRYE & WARREN LLP
David E. Frulla (*pro hac vice*)
Bret A. Sparks (*pro hac vice*)
3050 K Street NW, Suite 400
Washington, DC 20007
Telephone:  (202) 342-8400
Facsimile:  (202) 342-8451
dfrulla@kelleydrye.com
bsparks@kelleydrye.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOOT BARN, INC., *et al.*<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROB BONTA<br><br>　　　　Defendant. | Civil Case No. 2:22-cv-02105-KJM-CKD<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE BY CENTER FOR BIOLOGICAL DIVERSITY, HUMANE SOCIETY OF THE UNITED STATES, AND HUMANE SOCIETY INTERNATIONAL** |

61762293.v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. Applicants Do Not Satisfy the Requirements for Intervention as of Right ..........................................................................................................2

    B. The Court Should Deny Applicants Permissive Intervention ............6

    C. Any Intervention Should Be Limited .................................................9

III. CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003)...................................................................................3

*Ass'n de Eleveurs de Canards et d'Oies du Quebec v. Harris*,
   No. 2:12–cv–05735–SVW–RZ, 2012 WL 12904081 (C.D. Cal. Aug. 8, 2012) .4

*Bazuaye v. I.N.S.*,
   79 F.3d 118 (9th Cir. 1996)........................................................................................7

*Donnelly v. Glickman*,
   159 F. 3d 405 (9th Cir. 1998)................................................................................6, 7

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011)..................................................................................2, 5

*Fresno County v. Andrus*,
   622 F.2d 436 (9th Cir. 1980).....................................................................................4

*Illinois Restaurant Ass'n v. City of Chicago*,
   No. 06 C 7014, 2007 WL 541926 (N.D. Ill., Feb. 12, 2007) .................................8

*League of United Latin American Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997)...........................................................................3, 4, 5

*Missouri v. Harris*,
   No. 2:14-cv-00341-KJM-KJ, 2014 WL 2506606 (E.D. Cal. June 3, 2014) ....6, 7

*North American Meat Institute v. Becerra*,
   No. 2:19-CV-08569-CAS-FFM (C.D. Cal. Nov. 22, 2019)..............................7, 9

*Northwest Forest Resource v. Glickman*,
   82 F.3d 825 (9th Cir. 1996).......................................................................................2

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009)..................................................................................3, 5

*Pickup v. Brown*,
   No. 2:12-CV-02497-KJM, 2012 WL 6024387 (E.D. Cal. Dec. 4, 2012) ....4, 6, 7

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) .......................................................................... 3, 5

*Southwest Center for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ............................................................................... 4

**Statutes**

California Penal Code Section 653o ............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 24(a) ............................................................................................. 2

Fed. R. Civ. P. 24(b) ......................................................................................... 6, 9

.

.

Plaintiffs Boot Barn, Inc. and Dan Post Boot Company (collectively, "Plaintiffs"), by and through undersigned counsel, respectfully submit this Opposition to the Motion to Intervene filed by the Center for Biological Diversity, Humane Society of the United States, and Humane International (collectively, "Applicants").

## I. INTRODUCTION

California Assembly Bill 1260 ("A.B. 1260") was signed into law by Governor Gavin Newsom on October 12, 2019, implementing present-day California Penal Code Section 653o(c) ("Section 653o(c)"). In pertinent part, Section 653o(c) provides as follows: "Commencing January 1, 2022, it is unlawful to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part of product thereof, of . . . a Teju, Ring, or Nile lizard." Plaintiffs are western wear companies that, prior to Section 653o(c)'s enactment, traded in leather products made from these covered lizard species into and within the State of California.

On November 22, 2022, Plaintiffs brought suit against Defendant the Honorable Rob Bonta, in his official capacity as Attorney General of California, for violations of the United States Constitution. Specifically, Plaintiffs alleged that California Penal Code §§ 653o and 653r, as they pertain to prohibiting trade in the parts and products of Teju, Ring, and Nile lizards, are preempted by the Supremacy Clause of the U.S. Constitution (Count I), and violate the Constitution's Dormant Commerce Clause (Count II). On June 16, 2023, Plaintiffs and Defendant submitted a Joint Status Report that proposed a briefing and hearing schedule to focus the immediate litigation on the legal merits of Plaintiffs' claims via Motion for Summary Judgment, with Plaintiffs' initial filing due August 4, 2023. *See* ECF 16. This proposed schedule was accepted by the Court during a scheduling conference on June 30, 2023. *See* ECF 19.

Just prior to the scheduling conference, Applicants filed a Motion to Intervene (either as of right or permissively) in this litigation. However, and as explained below, Applicants have not provided a sufficient explanation as to why Defendant will not adequately represent their interests in the course of this litigation. Moreover, granting Applicants "full party" status in this case is neither necessary nor beneficial to the Court's resolution of the issues here, and would only serve

to delay the proceedings, unnecessarily complicate the factual record, and waste judicial resources. For the reasons discussed below, Applicants' Motion should be denied. In the alternative, if the Court decides to grant Applicants' Motion, Plaintiffs respectfully request that the Court impose certain limitations on Applicants' involvement as intervenors.

## II. ARGUMENT

### A. Applicants Do Not Satisfy the Requirements for Intervention as of Right

The United States Court of Appeals for the Ninth Circuit has outlined four elements a would-be intervenor must satisfy to intervene as of right under Federal Rule of Civil Procedure 24(a)(2): "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the transaction; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit." *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996) (citation omitted). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 947 (9th Cir. 2009)). Plaintiffs do not contest that Applicants' Motion is timely.

Applicants proffer two "significantly protectable interests" in this action: (1) "defending the legality of the statute they supported," and (2) "organizational interests in preserving and protecting wildlife species." ECF 17 at 10-11. Generally, a public interest group has a protectable interest where it was directly involved in the enactment of law or in the administrative proceedings out of which the litigation arose. *See Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). Plaintiffs note, however, that Applicants fail to express their direct connection to A.B. 1260, and instead speak to past legislative efforts involving Section 653o's inclusion of other species, such as alligators and crocodiles. ECF 17 at 10-11. Indeed, neither Applicants' motion for intervention nor any of its supporting declarations make mention of A.B. 1260, Applicants' involvement with the state legislative process leading to A.B. 1260's passage, or their institutional focus on Teju, Ring, and Nile lizards specifically.

**Opposition to Motion to Intervene**   2
61762293.v1

Moreover, as courts (including this Court) have found, Applicants cannot show under the applicable Ninth Circuit standards that the State Defendant will not adequately represent Applicants' interests. Although Applicants argue that their burden of demonstrating that Defendant cannot adequately protect Applicants' interests in this case is "minimal," ECF 17 at 15 (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001)), "the requirement is not without teeth." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). Specifically, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id*. (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). "Proposed interveners with the same objective but different litigation strategies are normally not entitled to intervention." *April in Paris v. Bonta*, 2:19-cv-02471-KJM-CKD, ECF 43 at 5 (citing *Arakaki*, 324 F.3d at 1086).

Moreover, "it will be presumed that a state adequately represents its citizens when the applicant shares the same interest," and so in cases involving the constitutionality of a state statute, a prospective intervenor must make "a *very compelling* showing" that the state will not adequately protect its interest. *Id*. (emphasis added); *see also Perry*, 587 F.3d at 952 (the courts apply a presumption that government defendants will adequately represent a prospective intervenor's interests, and the burden is on the prospective intervenor to make a "'compelling showing' to the contrary") (quoting *Arakaki*, 324 F.3d at 1086). If the prospective intervenor argues that its interpretation of a contested statute differs from that of the government, "the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Missouri*, 2014 WL 2506606 at *3 (E.D. Cal. 2014) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)).

Here, both Applicants and Defendant share the same ultimate objective: defending sections 653o and 653r against Plaintiffs' constitutional claims. In cases such as this, courts repeatedly have held that the state defendant adequately represents a prospective intervenor's interests. *See, e.g., Prete*, 438 F.3d at 957 ("defendant is the Oregon government, and intervenor-defendants . . . share the same interest with defendant, *i.e.*, defending Measure 26. Therefore, it is assumed that defendant is adequately representing intervenor-defendants' interests"); *League*

**Opposition to Motion to Intervene**            3
61762293.v1

*of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) ("*LULAC*"). Indeed, would-be intervenors, including Applicant HSUS, have been denied intervention as of right *in this Circuit* for this precise reason time and time again. *See, e.g., Missouri*, 2014 WL 2506606 at *6 (finding "HSUS fail[ed] to demonstrate a likelihood that [defendant the State of California] [would] 'abandon or concede a potentially meritorious reading of the statute'") (quoting *Lockyer*, 450 F.3d at 442); *Ass'n de Eleveurs de Canards et d'Oies du Quebec v. Harris*, No. 2:12–cv–05735–SVW–RZ, 2012 WL 12904081, at *2 (C.D. Cal. Aug. 8, 2012) (denying HSUS intervention as of right where HSUS's claim that state defendants "cannot adequately represent their interests because the public includes 'the meat industry' and that Defendants will be 'motivated' by 'financial, political or other pressures'" was no more than "rank speculation"); *see also Pickup v. Brown*, No. 2:12-CV-02497-KJM, 2012 WL 6024387 (E.D. Cal. Dec. 4, 2012) ("[S]imply because [proposed intervenor] would make slightly different arguments from the Attorney General does not amount to a 'compelling showing' of inadequacy, or that it offers a 'necessary element' to the litigation") (citation omitted).

The cases cited by Applicants are distinguishable because they do not involve the adequacy of a state defendant's ability to defend the constitutionality of its own law; moreover, each of these cases involves some additional reason as to why the defendant would not adequately protect the intervenor's interest.  *See* ECF 17 at 15-16 (citing *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (2011) (United States Forest Service would not adequately represent intervenors' interest where it was simultaneously appealing the district court ruling that had led the agency to adopt the challenged order); *Southwest Ctr. for Biological Diversity*, 268 F.3d 810 (City and federal agency defendants could not be expected to adequately represent intervenors' interests in the legality of an incidental take plan ("ITP") and Multi–Species Conservation Program ("MSCP"), where intervenors were stakeholders in a duly-constituted working group responsible for developing the MSCP); *Fresno County v. Andrus*, 622 F.2d 436 (9th Cir. 1980) (Department of the Interior would not adequately protect intervenors' interests where the Department undertook its challenged rulemaking, which intervenors sought to defend, only after intervenors brought a lawsuit against the Department).  Indeed, in *LULAC*, the Ninth

Circuit specifically distinguished the *Sagebrush Rebellion* case on which Applicants heavily rely. *LULAC* found that in *Sagebrush Rebellion* "the court permitted the Audubon Society to intervene on behalf of the defendants, in light of the fact that the party-*defendant* to the case, Secretary of Interior James Watt, had before his cabinet appointment been the director of the public interest group representing the *plaintiffs'* interests in the litigation." *LULAC*, 131 F.3d at 1306 (emphasis in original).

Here, Applicants fail to make any compelling showing – much less a "very compelling showing," *Prete*, 438 F.3d at 956 – that the Defendants will not adequately represent Applicants' interests. Unlike the intervenors in the cases cited by Applicants, Applicants here proffer only conjecture as to whether, and how, the Defendants' position may differ from Applicants' position. *See* ECF 17 at 16 ("the State *may well* take positions that do not reflect Applicants' specific interests") (emphasis added). Of course, "mere[] differences in [litigation] strategy…are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 966 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 402-03 (9th Cir. 2002)). Moreover, HSUS's speculation as to how the Defendants might defend Section 653o(c) is insufficient to overcome the presumption of adequate representation. *See Freedom from Religion Found.*, 644 F.3d at 842 (the "mere possibility" that the government defendants "might decline to appeal" was insufficient to rebut the presumption of adequacy).

This case is also readily distinguishable from the Court's decision on an intervention motion in the related case *April in Paris v. Bonta*, 2:19-cv-02471-KJM-CKD, ECF 43 (herein, the "*April in Paris* intervention decision"), in which this Court granted intervention for these same Applicants <u>only after</u> receiving and reviewing the State Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction. *See* the *April in Paris* intervention decision at 6-7 ("The proposed intervenors cite several Ninth Circuit cases in which intervention was granted despite the applicants' sharing the putative goal of the government, for the proposition that the government will not defend their interests. These cases are distinguishable, because in them the courts found evidence that supported the conclusion the same agencies responsible for enforcement of the law had particularized incentives not to do so vigorously. . . . Here, section

**Opposition to Motion to Intervene**  5
61762293.v1

653o was not enacted under duress or compulsion and the executive agencies tasked with its enforcement have not shown particular incentives not to do so.")

Moreover, and in direct contrast to *April in Paris* – where Applicants argued that the State Defendants' stipulation to a temporary restraining order indicated potential unwillingness to vigorously defend the state statute (an argument which this Court rejected outright; *see* the *April in Paris* intervention decision at 6) – here the lizard ban has been enforced by Defendant and its officers since its enactment on January 1, 2022.  Thus, Applicants can neither allege nor demonstrate that Defendant will not fully defend the constitutionality of the lizard ban in this immediate case.  Finally, Applicants rely on the scope of State Defendants' defense in *April in Paris* as justification for intervention here; however, Applicants can provide no evidence that Defendant here will utilize the same defensive claims as it did in *April in Paris*, especially given that the nature of Plaintiffs' arguments here also diverge from those made in *April in Paris* (*e.g.*, express preemption vs. implied preemption).  *See Pickup*, 2012 WL 6024387, at *3 (denying applicant intervention as of right where applicant did not show that the state had "actually argued before this court for a narrower construction of the statute" at issue).

Applicants have failed to overcome their burden of demonstrating the Defendant will not adequately represent Applicants' interests.  Accordingly, Applicants should be denied intervention as of right.

### B. The Court Should Deny Applicants Permissive Intervention

The Court should further exercise its discretion to deny Applicants permissive intervention in this case. "An applicant who seeks permissive intervention [under Fed R. Civ. P. 24(b)(2)] must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412 (citing *Northwest Forest Resource Council*, 82 F.3d at 839). Plaintiffs do not dispute that Applicants meet the second and third requirements for permissive intervention.

With regard to the first prong of this test, Applicants offer a conclusory assertion that they meet this prong because "courts have concluded that when a public interest organization seeks to

intervene to defend a statute alongside the state, the applicant's defense shares common questions of law." ECF 17 at 19 (citing *Harris*, 2014 WL 2506606, at *7; *Pickup*, 2012 WL 6024387, at *4). In *Harris*, however, this Court did not need to address the issue of whether the applicant's defense shared common questions of law with the defendants', as the plaintiffs in that case *conceded* that HSUS shared a common question of law and fact with the State of California. *Harris*, 2014 WL 2506606, at *7. Moreover, in *Pickup* – as in many other cases – the court found a public interest group applicant shared a common question of law or fact with the state defendant solely *because* the applicant explained its intended arguments in its brief. *See Pickup*, 2012 WL 6024387, at *4 (applicant "explained in its brief" that it intended to provide information on the challenged statute specifically relating to "the constitutional issues in the case"); *see also Nat'l Pork Producers Council,* 2020 BL 7623, at *2 (applicants had represented to the court that their "defenses [were] based *solely* on legal arguments as to insufficiency of the claims raised" by the plaintiffs) (emphasis added); *North American Meat Institute v. Becerra*, No. 2:19-CV-08569-CAS-FFM, at *4 (C.D. Cal. Nov. 22, 2019) (applicants "represent[ed] that their *defenses are based on the same legal arguments* that the state has raised") (emphasis added).

Here, by contrast, Applicants' brief is nearly silent as to how they intend to defend sections 653o and 653r. Indeed, the sum total of Applicants' stated intent in this regard is that they "seek to defend the legality of the statute they supported," ECF 17 at 10, and "seek to intervene to defend Penal Code section 653 along with the State of California." *Id*. at 19. Applicants have not indicated that their legal defenses will be based on the same legal arguments as the Defendant's, as the intervenor did in *North American Meat Institute*, or even that their defenses will be limited solely to the constitutionality of the challenged statutes, as the intervenors did in *Pickup* and *National Pork Producers Council*. Applicants' failure in this regard undercuts their argument that they meet the requirements for permissive intervention, and any attempt to remedy this failure on reply should be rejected. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived").

However, "[e]ven if an applicant satisfies th[e]se threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F. 3d 405, 412 (9th

**Opposition to Motion to Intervene**               7
61762293.v1

Cir. 1998) (citation omitted). "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*. (citations omitted). Here, Applicants have not even alleged, or attempted to show, that their involvement as parties in this litigation would not unnecessarily expand and delay this proceeding. Nor could they do so; it is evident from Applicants' Motion that their claims will only delay and unduly complicate these proceedings and prejudice Plaintiffs by introducing purported wildlife trade issues irrelevant to the constitutionality of Section 653o(c) as it applies to Teju, Ring, and Nile lizards. *See generally* ECF 17 at 4-8. *See also*, *e.g.*, *Ass'n de Eleveurs de Canards et d'Oies du Quebec*, 2012 WL 12904081 at *2 (denying HSUS motion to intervene in foie gras case because "allowing permissive intervention in this case will likely cause undue delay and inevitably multiply the proceedings"); *see also Illinois Restaurant Ass'n v. City of Chicago*, No. 06 C 7014, 2007 WL 541926, at *2 (N.D. Ill., Feb. 12, 2007) (denying HSUS intervention in similar foie gras case because the court found it "unclear how the proposed intervenors, all of whom support the foie gras ban because they are proponents of animal rights, will provide meaningful help in determining if the ordinance is constitutional," and "the only foreseeable consequence of adding the proposed intervenors into this action is to interject topics which are not germane to the constitutional issues before the court").

Indeed, Applicants have already attempted to interject topics which are not germane to the issues before this Court. For instance, Applicants introduce issues concerning the global crisis of wildlife exploitation (ECF 17 at 3), the nature of wildlife trade in *all* reptiles, (*id.* at 3-4), and the impacts of Section 653o on all other listed species including polar bears, cheetahs, whales, elephants, and kangaroos (*id.* at 12-13). These issues are not relevant to what would otherwise be a relatively straightforward, facial constitutional analysis of the state statute *as it applies to Teju, Ring, and Nile lizards*. Applicants' efforts to salt the record with additional facts and trends which have no bearing on the constitutionality of the state law only stand to further delay and complicate this litigation. Should Applicants wish to provide this information for the Court's consideration, Plaintiffs' respectfully proffer that an *amicus* brief would serve as a more appropriate means for doing so without needlessly expending additional judicial resources and

time.

Simply put, Applicants' involvement as a full party in these proceedings would unduly complicate this case by introducing "factual" claims that are neither relevant to the facial constitutional challenge, nor ultimately provable as fact. The federal questions presented require a legal determination on the constitutionality of a state law; they do not involve weighing matters of opinion as would occur in legislative deliberations. Applicants should not be allowed to convert these proceedings into protracted, discovery- and resource-intensive litigation. Consistent with the applicable permissive intervention standards, this Court has full discretion and authority to prevent precisely this type of unnecessary delay and overwhelming prejudice.

### C.   Any Intervention Should Be Limited

For the reasons discussed herein, Applicants should be denied intervention, either as of right or permissively. To the extent the Court grants Applicants intervention in this case, however, such intervention should be limited.

Courts routinely limit intervenors' participation in cases to promote efficiency and limit prejudice to existing parties. *See, e.g.*, *Nat'l Pork Producers Council,* 2020 BL 7623, at *2 (requiring intervenors to (1) abide by the same deadlines as existing defendants; (2) file jointly; and (3) not seek discovery from plaintiffs); *N. Am. Meat Institute v. Becerra*, No. 2:19-CV-08569-CAS-FFM, at *4 (same). Plaintiffs request that the Court similarly limit Applicants' intervention here, to the extent the Court grants Applicants' Motion. Should Applicants be allowed to intervene in the case at bar, Plaintiffs further request that their page limitations be expanded to allow Plaintiffs to address any additional arguments made by Applicants.

Moreover, Plaintiffs specifically request that the Court limit Applicants' intervention to the specific issue of interstate commerce (Count II). Applicants state that their interest in this case is to "combat the rampant international trade in imperiled and over-exploited species," ECF 17 at 11, which can conceivably relate only (if at all) to certain potentially relevant elements of Plaintiffs' Dormant Commerce Clause argument. Plaintiffs' other arguments relating to preemption (Count I) are straightforward legal issues that can be decided without any reference to the type of extraneous facts Applicants have proffered. Allowing Applicants to intervene on

Count I would only "cause undue delay and inevitably multiply the proceedings." *Ass'n de Eleveurs de Canards et d'Oies du Quebec*, 2012 WL 12904081 at *2 (citing *Donnelly*, 159 F.3d 405; Fed. R. Civ. P. 24(b)(3)).

### III. CONCLUSION

For all the reasons discussed herein, Plaintiffs respectfully request that the Court deny Applicants' Motion to Intervene, both as of right and permissively.

In the alternative, to the extent the Court grants Applicants' motion, Plaintiffs respectfully request that the Court limit Applicants intervention as follows: (1) Applicants shall abide by the same deadlines as the State Defendant; (2) Applicants shall file jointly; and (3) Applicants shall not seek discovery from Plaintiffs. Plaintiffs further request that their page limitations be expanded to allow Plaintiffs to address any additional arguments made by Applicants.

Respectfully submitted,

Dated: July 10, 2023            By:    /s/ *Christopher D. Hughes*

NOSSAMAN LLP
Paul S. Weiland (SBN 237058)
Christopher D. Hughes (SBN 254864)
621 Capitol Mall, Suite 2500
Sacramento, CA 95814
Telephone: (916) 442-8888
Facsimile: (916) 442-0382
pweiland@nossaman.com
chughes@nossaman.com


By:    /s/ *David E. Frulla*

KELLEY DRYE & WARREN LLP
David E. Frulla (*pro hac vice*)
Bret A. Sparks (*pro hac vice*)
3050 K Street NW, Suite 400
Washington, DC 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451
dfrulla@kelleydrye.com
bsparks@kelleydrye.com

*Counsel for Plaintiffs*

**Opposition to Motion to Intervene**            10
61762293.v1