UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Boot Barn, Inc., et al., | No. 2:22-cv-02105-KJM-CKD |
| Plaintiffs, | ORDER |
| v. | |
| Rob Bonta, in his official capacity as Attorney General for the State of California, | |
| Defendant. | |

For the reasons in this order, the motion to intervene at ECF No. 17 is **granted**. The proposed intervenors have shown they are entitled to intervene as a matter "of right" under Federal Rule of Civil Procedure 24(a)(2).

The plaintiffs in this action are western wear companies that sell boots, shoes, and belts made from the leather of Teju and Ring lizards, among other animals. Compl. ¶¶ 6–7, ECF No. 1. In 2019, California criminalized trade in products made from the bodies of Teju and Ring lizards, and the prohibition took effect in January 2022. *See id.* ¶ 2 (citing Cal. Pen. Code § 653*o*(c)). Plaintiffs challenge the prohibition in this lawsuit. First, they claim the federal Endangered Species Act impliedly preempts the California law. *Id.* ¶¶ 16, 26–30. Second, plaintiffs allege the California law unconstitutionally restricts trade between states and so violates the Commerce Clause. *See id.* ¶¶ 31–58. They seek a declaration limiting the state's power to

enforce the challenged penal code section, *id.* ¶¶ 59–66, and confirming that section is an unconstitutional trade restriction, *id.* ¶¶ 67–71.  The complaint names only one defendant, the California Attorney General, who is sued in his official capacity as the state's chief law enforcement officer.  *See id.* ¶ 8.

Other sellers and distributors of animal products have recently litigated several similar claims about a different subsection of the same California law, which prohibits trade in different animal products.  Earlier this year, this court enjoined enforcement of that section to the extent it prohibited trade in alligators and crocodiles.  *See generally, e.g.*, *Apr. in Paris v. Bonta*, ___ F. Supp. 3d. ___, No. 19-02471, 2023 WL 2392818 (E.D. Cal. Mar. 7, 2023).  And in another recent order filed in a third case, this court preliminarily enjoined California's prohibition on trade in caiman products.  *Los Altos Boots v. Bonta*, 562 F. Supp. 3d 1036 (E.D. Cal. 2021).  Although this case shares many features with *April in Paris* and *Los Altos Boots*, the cases do not overlap completely.  Unlike the plaintiffs in *April in Paris* and *Los Altos Boots*, who alleged the Endangered Species Act expressly preempted the disputed California prohibition, the plaintiffs in this case rely only on theories of implied preemption.  *See* Compl. ¶ 4.  Nor did this court consider in *April in Paris* or *Los Altos Boots* whether California's law ran afoul of the Constitution's implied prohibition of interstate protectionism, as the plaintiffs in this case contend it does.  *See id.* ¶ 5.

Whether these differing legal theories will lead to different results is a question for another day.  A preliminary dispute must be resolved first.  Three advocacy organizations move to intervene to defend California's prohibition against the plaintiffs' claims: the Center for Biological Diversity, the Humane Society International, and the Humane Society of the United States.  *See generally* Mot., ECF No. 17.  In *April in Paris* and *Los Altos Boots*, this court permitted the same three organizations to intervene to defend the same statute: In *April in Paris*, the court granted the groups' request to intervene over the plaintiffs' objection.  *See generally Apr. in Paris v. Bonta*, No. 19-02471, 2020 WL 2404620 (E.D. Cal. May 12, 2020).  In *Los Altos Boots*, the parties stipulated to their intervention, and the court approved the stipulation.  *See* Stip. & Order at 2, *Los Altos Boots v. Bonta*, No. 21-1652 (E.D. Cal. Mar. 2, 2022), ECF No. 39.  The

parties have not reached a stipulation in this case.  As did the plaintiffs in *April in Paris*, the plaintiffs in this case oppose intervention; California does not.  *See generally* Opp'n, ECF No. 20; Stmt. Non-Opp'n, ECF No. 21.  The court received briefing on the question and submitted the matter for decision without hearing oral arguments.  *See generally* Reply, ECF No. 22; Min. Order, ECF No. 24.

In some circumstances, district courts must allow a person to intervene.  In the language of the Federal Rules, the intervention is a matter "of right." Fed. R. Civ. P. 24(a).  The Rules impose a number of requirements on those who claim a right to intervene.  The proposed intervenors in this case have clearly satisfied most of those requirements.  They filed a "timely" motion soon after the case was filed, Fed. R. Civ. P. 24(a), and they "have claimed an interest in the resolution of this lawsuit that may be practically impaired or impeded without their participation." *Berger v. N.C. State Conf. of the N.A.A.C.P.*, 142 S. Ct. 2191, 2201 (2022).  For example, they supported the bill that eventually became the challenged Penal Code section, and their efforts to protect Tegu and Ring lizards would be impaired if the state does not successfully defend that section.  *See Apr. in Paris*, 2020 WL 2404620, at *2–3; Carpenter Decl. ¶¶ 2–4 & Attach., ECF No. 22-1.  The only potential uncertainty about the three organizations' right to intervene is whether the Attorney General will "adequately" represent their interests; to intervene under Rule 24(a)(2), the organizations must show he may not.  *See Berger*, 142 S. Ct. at 2203.

This requirement ordinarily presents would-be intervenors with only a "minimal challenge." *Id.*; *see also, e.g.*, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  That challenge can be more difficult if, as in this case, the would-be intervenor is a member of the public who "seeks to intervene to defend a law alongside the government." *Berger*, 142 S. Ct. at 2204.  The Ninth Circuit has long employed a "presumption" or "assumption" that the government will adequately defend its laws on behalf of its citizens.  *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997).  To overcome that presumption, a would-be intervenor must

1   offer a "compelling" reason to believe the state will not adequately represent its interests. *E.g.*,
2   *Lockyer*, 450 F.3d at 443 (citation omitted).

3         One way a proposed intervenor can satisfy that obligation is by showing the state will
4   likely "abandon or concede"—or has in fact already abandoned or conceded—"a potentially
5   meritorious reading of the statute." *Id.* at 444. This court permitted the same three advocacy
6   organizations to intervene in *April in Paris* after finding the state would inadequately represent
7   the applicants' interests. *See* 2020 WL 2404620, at *4. The Attorney General had advanced a
8   "strained and limited reading in an attempt to save the statute," whereas the three intervening
9   organizations had proposed to defend the statute broadly. *Id.* The Attorney General also
10  presented a narrow defense in *Los Altos Boots*, the separate case about caiman products. *See,*
11  *e.g.*, Cal. Opp'n Prelim. Inj. at 5–9, *Los Altos Boots v. Bonta*, No. 21-1652 (E.D. Cal. Oct. 15,
12  2021), ECF No. 27.

13        The Attorney General may very well mount a more comprehensive defense of the state's
14  prohibitions in this case than he did in *April in Paris* and *Los Altos Boots*. But the court cannot
15  say with confidence he is likely to do so. After all, some of the plaintiffs in *April in Paris* argued
16  the statute was preempted impliedly, as the plaintiffs in this case now do, and although the court
17  did not reach those arguments, the Attorney General did not address them directly, and instead
18  relied on the same narrow defense for all the plaintiffs' claims. *Compare, e.g.*, Mem. Summ. J. at
19  14–17, *Delacroix Corp. v. Bonta*, No. 19-2488 (E.D. Cal. Oct. 19, 2021), ECF No. 54-1, *with*,
20  *e.g.*, Cal. Reply. at 2–4, No. 19-2471 (E.D. Cal. Jan. 24, 2022), ECF No. 70.[1] Only the
21  intervenors defended the statute directly against the plaintiffs' argument for implied preemption.
22  *See* Intervenors Reply at 5–7, *Apr. in Paris v. Bonta*, No. 19-2471 (E.D. Cal. Jan. 31, 2022), ECF
23  No. 71.

24        Comparisons between this case and others confirm the state will probably not present the
25  sort of comprehensive defense that can prove an absent person's interests will be represented
26  adequately. For example, the Attorney General has not stated on the record that he will "make all

---

[1] The *Delacroix* action was consolidated with the *April in Paris* action. *See Apr. in Paris*, 2023 WL 2392818, at *14.

1  arguments necessary to defend" California's law. *Arakaki*, 324 F.3d at 1087. He has instead
2  elected not to oppose the intervention. Nor have state officials "vigorously defended" the
3  challenged statute "at every turn," from temporary restraining order to appeal, as the Governor
4  and Attorney General did in *League of United Latin American Citizens*, 131 F.3d at 1305–06.
5  The state's stance in this case resembles instead the sort of cautious and limited litigation that has
6  justified intervention by others under Rule 24(a)(2) in other cases. *See, e.g.*, *Berger*, 142 S. Ct. at
7  2199, 2205 (summarizing litigation decisions and suggesting state defendants were not litigating
8  with "vigor"). This is, of course, no criticism of the Attorney General; there are legitimate
9  reasons for a measured or limited stance, from the pressures of divided government to the
10 strategic allocation of resources, among others. *See, e.g.*, *Berger*, 142 S. Ct. at 2205; *Apr. in
11 Paris*, 2020 WL 2404620, at *3.

12        This case also differs more fundamentally from others in which citizens were adequately
13 represented by government officials. The three proposed intervenors are not California citizens in
14 the traditional sense; they are advocacy organizations whose operations and memberships go
15 beyond California's borders. *See, e.g.*, Smith Decl. ¶¶ 6, 11, ECF No. 17-1 ("The [Humane
16 Society of the United States] has devoted substantial staff time and organizational resources to
17 securing the adoption of state and local sales prohibitions in California jurisdictions and across
18 the country. . . ."); Regnery Decl. ¶ 4, ECF No. 17-2 ("[The Humane Society International] works
19 around the globe to . . . stop wildlife abuse . . . and confront cruelty to animals in all of its
20 forms."); Cummings Decl. ¶ 4, ECF No. 17-3 ("[The Center for Biological Diversity] has over
21 1.6 million supporters, 990,000 members and online activists, including nearly 130,000 who live
22 in California, and many who visit and/or reside in other countries inhabited by imperiled
23 reptilians, the species that California's wildlife trafficking statute, California Penal Code Section
24 653o, seeks to protect."). California's interests in protecting its penal code likely differ from
25 those of these three organizations, who represent people outside California and the United States
26 and whose goals go beyond any one state's laws.

27        In sum, the court cannot conclude the Attorney General will make all the proposed
28 intervenors' arguments; it is unclear whether the Attorney General is capable of making and

willing to make all those arguments.  For that reason, the proposed intervenors have rebutted the presumption the Attorney General will adequately represent their interests in their absence.  *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 901 (9th Cir. 2011).  They have a "right" to intervene under Rule 24(a)(2).  The court need not and does not consider whether the proposed intervenors would be permitted to intervene under Rule 24(b).  *See* Mot. at 19–20.

The motion to intervene (ECF No. 17) is **granted**.

IT IS SO ORDERED.

DATED:  August 9, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE